| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | **UNITED STATES DISTRICT COURT** |
| 7 | **EASTERN DISTRICT OF CALIFORNIA** |
| 8 | |

| | | |
|---|---|---|
| 9 | **LORENA GUTHRIE,** | **CASE NO. 1:18-CV-282 AWI-BAM** |
| 10 | **Plaintiff** | **ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| 11 | **v.** | |
| 12 | **HUGH J. HURWITZ, Acting Director, Federal Bureau of Prisons,** | (Doc. No. 20) |
| 13 | | |
| 14 | **Defendant** | |

15     Plaintiff Lorena Guthrie, a former employee of the Bureau of Prisons, claims that between

16 May 2008 and October 2009, she was subjected to a hostile work environment engendered by two

17 of her superiors at the U.S. Penitentiary in Atwater, California.  Doc. No. 19.  She alleges Title VII

18 claims of gender discrimination and retaliation, each under a theory of hostile work environment,

19 against her former employer.  Doc. No. 19.

20     The Bureau now moves to dismiss the First Amended Complaint for failure to state a

21 claim. Doc. No. 20.  The Bureau contends: (I) Guthrie's gender-discrimination claim fails because

22 the facts in the complaint concerning reprimands and discipline are merely "discrete acts"—which

23 cannot be part of a hostile-work-environment claim—and all remaining allegations are either

24 conclusory or fail to show a workplace fraught with "severe and pervasive verbal or physical

25 conduct of a sexual nature," and; (II) her retaliation claim fails because the complaint contains no

26 facts showing she engaged in a protected activity that was the "but-for" cause of any adverse

27 employment action, or that any such retaliation was severe and pervasive.

28     For the reasons that follow, the Court will deny the Bureau's motion.

*Background*[1]

2     According to the First Amended Complaint (the "1AC"), Guthrie began working for the

3 Bureau of Prisons at USP Atwater in September 2001, and in 2004 was promoted to the Special

4 Investigative Support Unit, which investigated criminal conduct within the prison. Doc. No. 19 at

5 ¶ 6. She excelled at this position, and simultaneously worked toward her nursing degree, with the

6 goal of transitioning into the Bureau's Health Care Administration unit. *Id*. at ¶¶ 6-7.

7     In April 2008, Guthrie's supervisor was replaced by SIA Jesse Estrada, a longtime friend

8 of the new Warden, Hector Rios. *Id*. at ¶ 8. The environment "changed dramatically" under

9 Estrada's and Rios's tenure, where "female employees were systematically undermined unless

10 they dressed provocatively, slept with male staff, or acquiesced to stereotypical female roles and

11 duties." *Id*. Guthrie was subjected to "repeated acts of discriminatory harassment based on her

12 gender that collectively created a hostile environment." *Id*. For example, Estrada often made

13 gender-infused comments about Guthrie—"my sister [is] giving me grief," she should take her

14 place as a secretary, coffee-maker, or maid—and once commented the male staff were his "sons"

15 that needed looking out for "because they are just like him." Doc. No. 12-3 at pp. 3-4 (EEO

16 Discrimination Complaint, March 2010). Once, after noticing a photo of her husband, Estrada

17 questioned her choice of husband, and commented she must have "never had a Texas Long Horn."

18 *Id*. at p. 3. Guthrie was repeatedly referred to as a "fat cow" and other insulting terms by Estrada,

19 was often ordered by him to clean the office including workspaces of her male colleagues. Doc.

20 No. 19 at ¶ 9. Guthrie alleges that this type of conduct continued "unabated and virtually daily[,]"

21 even though she made multiple complaints to her supervisors between June 2008 to the fall 2009.

22 *Id*. at ¶¶ 9- 10.

23

---

[1] These facts derive from the 1AC and attached Exhibit A (Doc. No. 19), as well as Guthrie's discrimination
24 complaint lodged with the Department of Justice EEO (Doc. No. 12-3). *United States v. Ritchie*, 342 F.3d 903, 907–
08 (9th Cir. 2003) ("A court's consideration of documents attached to a complaint or incorporated by reference or
25 matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment"); *Lacayo v.
Donahoe*, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) ("In the context of employment discrimination cases[,] it
26 is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as
judicially noticeable matters of public record.") (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th
27 Cir.2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public
record.")).
28 The facts are presented in the light most favorable to Guthrie, the non-moving party. *Faulkner v. ADT Sec. Servs.*,
706 F.3d 1017, 1019 (9th Cir. 2013).

Guthrie also alleges that on numerous occasions, Estrada rescinded her approved schedule requests and unilaterally altered her schedule to interfere with her school responsibilities (and did not similarly do so for male employees), refused to approve overtime for her (despite approval for male employees), disciplined her for dressing down (despite male staff being dressed down), and excluded from official meetings (attended by male staff). *Id.* She was "repeatedly placed in unsafe situations without backup or support . . . and was denied training and advancement opportunities that her male counterparts were receiving." *Id.* Shortly after Guthrie complained of the "Texas Long Horn" comment to her supervisors, Guthrie was "placed under 'investigation' regarding her computer use. *Id.* at 11. A computer tech at Atwater testified (in a related administrative hearing) he was repeatedly asked to unlawfully surveil Guthrie's computer—first by Estrada, then by Warden Rios. Doc. No. 19 at Ex. A, p. 1379, 1384-89 (Transcript of Administrative Hearing in *Kodger et al. v. Holder, DOJ, Bureau of Prisons*). The tech contended Estrada said to him "[n]obody's going to help me bust [Guthrie]. I can't get anybody to help me bust her." *Id.* at 1385 ¶¶ 24-25. The tech also said Warden Rios admonished him to "get with the program" concerning Estrada's unlawful surveillance order. *Id.* at 1389 ¶ 6.

In early September 2009, Estrada continued his "[d]aily non-acknowledgement" of Guthrie by turning his back on her and "speaking to all male staff" at an employee meeting. Doc. No. 12-3 at p. 4. On September 17, 2009, Guthrie contacted her department's EEO counselor, complaining of this and other events concerning Estrada and Warden Rios. *See* Doc. No. 12-3. In November of 2009, Guthrie resigned from the Bureau, as she was "suffering mentally" and was concerned Warden Rios would terminate her "based on false allegations that could damage her future career goals[.]" Doc. No. 19 at ¶ 14. She submitted a "Charge of Discrimination with the Department of Justice EEO in March of 2010, and no final action has been taken to date. *Id.* at ¶ 3.

In September of 2018, Guthrie filed her 1AC, alleging Title VII claims of gender discrimination and retaliation, each under a theory of hostile work environment. Doc. No. 19. The Bureau now moves to dismiss both claims for failure to state a claim. Doc. No. 20.

///

///

3

1

*Legal Standard*

2      A claim may be dismissed because of the plaintiff's "failure to state a claim upon which

3 relief can be granted." Rule 12(b)(6).[2]  A Rule 12(b)(6) dismissal may be based on the lack of a

4 cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal

5 theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015).  All well-pleaded allegations

6 of material fact are taken as true and construed in the light most favorable to the non-moving

7 party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

8      To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter,

9 accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

10 662, 678 (2009); *Mollett*, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff

11 pleads factual content that allows the court to draw the reasonable inference that the defendant is

12 liable for the misconduct alleged." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)

13 (quoting *Iqbal*, 556 U.S. at 678).  "Plausibility" means "more than a sheer possibility," but less

14 than a probability, and facts that are "merely consistent" with liability fall short of "plausibility."

15 *Id*.  The plausibility inquiry is "a context-specific task that requires the reviewing court to draw on

16 its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The Ninth Circuit has

17 distilled the following principles to apply to Rule 12(b)(6) motions:

18

> First, to be entitled to the presumption of truth, allegations in a complaint or
> counterclaim may not simply recite the elements of a cause of action, but must
> contain sufficient allegations of underlying facts to give fair notice and to enable
> the opposing party to defend itself effectively.
> Second, the factual allegations that are taken as true must plausibly suggest an
> entitlement to relief, such that it is not unfair to require the opposing party to be
> subjected to the expense of discovery and continued litigation.

19

20

21

22

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

23

24      If the motion to dismiss is granted, "[the] district court should grant leave to amend even if

25 no request to amend the pleading was made," unless amendment would be futile or the plaintiff

26 has failed to cure deficiencies despite repeated opportunities. *Garmon v. County of L.A.*, 828 F.3d

27 837, 842 (9th Cir. 2016).

28

---

[2] Citation to the "Rule" or "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

*Parties' Arguments*

The Bureau contends the 1AC amounts to "nothing more than legal conclusions and naked assertions devoid of further factual enhancement."  Doc. No. 20.  Specifically, the Bureau argues:

(I) The claim for gender discrimination fails because all facts in the 1AC concerning reprimands and discipline are merely "discrete acts"—which cannot be considered when parsing a discrimination claim under a hostile-work-environment theory, and the remaining allegations in the 1AC are either conclusory, time barred, or not "severe and pervasive" enough to indicate a hostile environment; and

(II) The retaliation claim fails because the 1AC contains no facts showing she engaged in a protected activity that was the "but-for" cause of any adverse employment action, or that any such retaliation was severe and pervasive.

Guthrie asserts the 1AC contains sufficiently-detailed factual allegations to put the Bureau on notice of her claims.  Doc. No. 22.  Guthrie argues:

(I) Discrete acts can certainly combine with other allegations to show a pervasive and hostile environment and need not be completely sifted out, and the Bureau is otherwise welcome to more detail of the hostile-work-environment claim—in discovery; and

(II) The factual contentions made in the 1AC are more than sufficient to allow the Bureau to defend itself against her retaliation claim.

Guthrie maintains that the level of detail sought by the Bureau, if deemed required under *Iqbal*, "could result in a complaint spanning hundreds of pages."  Since 1AC alleges a few specific instances, and then states incidents like these "occurred nearly every day for more than a year," requiring more detail would run afoul of the federal requirement that a complaint be a "short and plain statement."

*Legal Standard for EEO Exhaustion*

Prior to filing any suit under Title VII, a federal employee must exhaust her administrative remedies by contacting the agency's EEO office "within 45 days of the date of the matter alleged to be discriminatory."  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a) and § 1614.106.  This deadline is treated as a statute of limitations for filing suit, and failure to comply is typically "fatal to a federal employee's discrimination claim in federal court."  *Kraus v. Presidio Tr. Facilities Div./ Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009).  The Court's subject matter jurisdiction extends over all allegations of discrimination that either "fell within the scope of the

[EEO]'s *actual* investigation or an [EEO] investigation which can reasonably *be expected* to grow out of the charge . . . ." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994) (emphasis in the original).  To determine what claims are exhausted, the Court may look beyond the explicit formal charge and consider such factors as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.*  The claim in the lawsuit must be "reasonably related" to the charge in the administrative complaint —when construed "with utmost liberality since [it is] made by those unschooled in the technicalities of formal pleading." *Id.*

*Analysis*

I.  **The 1AC contains sufficient, plausible allegations of non-discrete, pervasive, unlawful acts, properly exhausted under a 'continuing violations' theory, so as to state a claim for hostile-work-environment gender-discrimination.**

A.  **Plausible Non-Discrete Acts of a Continuous Nature**

Title VII prohibits employers from discriminating against an employee on the basis of sex with respect to her "compensation, terms, conditions, or privileges of employment[.]" 42 U.S.C. § 2000e-2(a)(1).  The classic discrimination claim is one that alleges an unlawful discrete act—something that occurred on the day it happened, such as a "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002). Conversely, "Title VII is not violated by simple teasing, off-hand comments, isolated incidents (unless extremely serious), or mere offensive utterance of an epithet which engenders offensive feelings in an employee." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998); *Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000) ("Title VII is not a general civility code.").

However, when individual acts are not in and of themselves actionable, but "occur over a series of days or perhaps years," the cumulative effect of these "non-discrete" acts can give rise to a Title VII discrimination claim under a hostile-work-environment theory.  *Morgan*, 536 U.S. at 115; *see Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (differentiating unactionable "discrete acts" like disciplinary threats from "non-discrete acts" like offensive

6

1   comments, obscenities, and sexual propositions, which are actionable in a hostile-work-

2   environment claim).  To analyze a discrimination claim under this theory, a court must first set

3   aside any discrete acts, then determine whether the non-discrete acts are sufficiently severe and

4   pervasive to establish a hostile work environment.  *See Porter*, 419 F.3d at 893–94.  "Of course,

5   discrete acts still may be considered for purposes of placing non-discrete acts in the proper

6   context."  *Id.* at 893 n. 4 (citing *Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee

7   from using the prior acts as background evidence in support of a timely claim.").

8          Ultimately, to make out a gender discrimination claim under the hostile-work-environment

9   theory, the employee must show (1) verbal or physical conduct of a sexually harassing nature that

10  was (2) unwelcome and (3) sufficiently severe or pervasive to alter the conditions of her

11  employment and create an abusive working environment.  *Arizona ex rel. Horne v. Geo Grp., Inc.*,

12  816 F.3d 1189, 1206 (9th Cir. 2016).  At the motion-to-dismiss stage, a Title VII plaintiff need not

13  satisfy the *McDonnell-Douglas* burden-shifting framework, but the Court must consider the

14  elements when determining if the complaint contains sufficient factual matter, accepted as true, to

15  state a plausible claim for relief.  *Carter v. Brennan*, 2018 WL 4810808, at *2 (E.D. Cal. Oct. 4,

16  2018) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 606, 515 (2002); *see also Fresquez v. County*

17  *of Stanislaus*, 2014 WL 1922560, at *2 (E.D. Cal. May 14, 2014) ("[W]hile a plaintiff need not

18  plead facts constitut[ing] all elements of a prima facie employment discrimination case [] to

19  survive a motion to dismiss, courts look to those elements . . . so as to decide, in light of judicial

20  experience and common sense, whether the challenged complaint contains sufficient factual

21  matter, accepted as true, to state a [plausible] claim to relief.").

22         Based on the EEO Complaint (Doc. No. 12-3) and 1AC with attached Exhibit A (Doc. No.

23  19), the Court finds the Bureau's motion to dismiss Guthrie's gender-discriminatory hostile-work-

24  environment claim to be faulty.  Guthrie contacted an EEO counselor on September 17, 2009,

25  alleging a series of gender-infused incidents perpetrated by Estrada and Warden Rios.  Doc. No.

26  12-3.  While most of these instances fall outside of the 45-day limitations period, as required by

27  federal regulations, Guthrie did allege that in early September, Estrada continued his "[d]aily non-

28  acknowledgement" of her by turning his back on her and "speaking to all male staff."  Doc. No.

1    12-3 at p. 4. *See Lyons v. England*, 307 F.3d 1092, 1105–06 (9th Cir. 2002) ("For hostile work

2    environment claims of a continuing nature, the aggrieved employee must allege at least one act

3    had occurred during the actionable time period.").

4          Tacked to this timely-exhausted allegation are multiple, older, specific allegations

5    demonstrating a continuous pattern of gender-based harassment. This includes allegations that

6    Estrada often made gender-infused comments about Guthrie—"my sister [is] giving me grief," she

7    should take her place as a secretary, coffee-maker, or maid—and once commented the male staff

8    were his "sons" that needed looking out for "because they are just like him." Doc. No. 12-3 at pp.

9    3-4 (EEO Discrimination Complaint, March 2010). Once, Estrada questioned her choice of

10    husband, and commented she must have "never had a Texas Long Horn." *Id*. at p. 3. In her 1AC,

11    Guthrie repeated many of these non-discrete allegations. *See* Doc. No. 19 at ¶ 9 ("Guthrie

12    regularly and on an ongoing basis suffered numerous indignities, including being referred to as a

13    "fat cow" and other insulting terms by Estrada, being exposed to inappropriate sexual commentary

14    by him, being exposed to gender discriminatory commentary by him, being ordered by him to

15    clean the office including workspaces of her male colleagues, being harassed for not making or

16    bringing him coffee, being singled out for baseless criticism in the presence of her fellow SIS

17    officers . . . ."); ¶ 11 (alleging Estrada made "insulting and sexually inappropriate comment about

18    a picture of her and her Caucasian husband on her desk, stating that she must have never 'had a

19    Texas longhorn.'").

20          Since the timely-exhausted act in early September 2009 is "reasonably related" to the other

21    non-discrete acts by Estrada and Rios, Guthrie's claim for hostile work environment is properly

22    based on exhausted non-discrete acts of a continuing nature. *See Morgan*, 536 U.S. at 122 ("[A]

23    hostile work environment claim will not be time barred so long as all acts which constitute the

24    claim are part of the same unlawful employment practice and at least one act falls within the time

25    period."); *Higdon v. Mabus*, 5 F.Supp.3d 1199, 1207 (S.D. Cal. 2014) (finding a complaint

26    sufficiently stated a hostile-work-environment claim where it alleged the non-discrete act of

27    "computer usage review" occurred within the 45 days of the plaintiff's contact with an EEO

28    counselor, and was related to other, time-barred incidents alleged in the complaint).

## B. Pervasiveness

As to the pervasiveness of the allegations contained in the 1AC, the Court agrees with Guthrie that *Iqbal* does not require the kind of detail sought by the Bureau. To determine whether the alleged instances are severe or pervasive enough to give rise to a hostile-work-environment claim, courts are to look at "all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or a mere offensive utterance), and whether it unreasonably interferes with an employee's work performance." *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Brooks*, 229 F.3d at 926. "At the pleading stage, a court may not have a complete picture of the circumstances surrounding the allegations of harassment." *Jaroslawsky v. City & Cty. of San Francisco*, 2013 WL 1287431, at *4 (N.D. Cal. Mar. 28, 2013).

Guthrie alleges the non-discrete acts described in Section I.A. continued "unabated and virtually daily[.]" Doc. No. 19 at ¶ 9. Her detail of some of the harassing events, combined with an allegation of daily continuity, should allow the Bureau to defend itself, and "plausibly suggest[s] an entitlement to relief." *Levitt,* 765 F.3d at 1135; *see also Caldwell v. Boeing Co.*, 2018 WL 2113980, at *5 (W.D. Wash. May 8, 2018) ("If the court evaluated these incidents in isolation, it might agree with Boeing. But that is not how the Ninth Circuit instructs the court to evaluate Mr. Caldwell's workplace harassment claim. The court looks at the totality of the circumstances, from the perspective of a reasonable victim.") (citations omitted); *Marasco v. Arizona Bd. of Regents*, 2013 WL 4029167, at *3 (D. Ariz. Aug. 8, 2013) (finding hostile work environment sufficiently pervasive where the complaint alleged plaintiff "was personally called derogatory names used for Italians on *multiple occasions* throughout his employment . . . .") (emphasis added); *Jaroslawsky*, 2013 WL 1287431, at *4 (denying motion to dismiss on hostile-work-environment claim, where supervisor "made *continuous* threats to terminate or to relocate her employment, denied her requests flex hours but granted similar requests to others, subjected her to continuous harassment, humiliation, ridicule, and isolation, and [] changed and eliminated most of her work assignments while denying her any new work assignments.") (emphasis added).

Further, the 1AC adds context to these kinds of non-discrete acts by describing how Estrada rescinded her approved schedule requests and unilaterally altered her schedule to interfere with her school responsibilities (and did not similarly do so for male employees), refused to approve overtime for her (despite approval for male employees), disciplined her for dressing down (despite male staff being dressed down), and excluded from official meetings (attended by male staff). Doc. No. 19 at ¶ 9. Guthrie was "repeatedly placed in unsafe situations without backup or support . . . and was denied training and advancement opportunities that her male counterparts were receiving." *Id.* While many of these "discrete" acts were sifted out in the above analysis, they certainly add context to the gender-discriminatory environment. *Porter*, 419 F.3d at 893 n. 4.

The cases cited by the Bureau in its moving papers are inapposite, as most concern a lack of severity or pervasiveness as shown by the evidence uncovered during discovery— i.e. on summary judgment. *See Porter*, 419 F.3d at 893; *Van Pelt v. Skolnik*, 897 F.Supp.2d 1031 (D. Nev. 2012); *Haley v. Cohen & Steers Capital Management, Inc.*, 871 F.Supp.2d 944 (N.D. Cal. 2012). As to the Bureau's cited cases in a Rule 12(b)(6) posture, they are also inapposite, as those courts found the complaints lacking in a way not so here. *See Phan v. Employment Dev. Dep't*, 2017 WL 3116826 (E.D. Cal. July 21, 2017) (dismissing where plaintiff "does not say who, when or in what office this conduct occurred."); *Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240, 1250 (N.D. Cal. 2014) (finding employee failed to allege pervasive conduct where she alleged only that one co-employee made sexual comments to other employees and to customers, another once gave her a dirty look and walked close behind her, and a group of male employees, which included two other co-employees, talked about female employees); *Foster v. ScentAir Techs., Inc.*, 2014 WL 2603995, at \*3 (N.D. Cal. June 10, 2014) (finding conduct not pervasive enough where "[t]he only instance of alleged abusive conduct relating to sex is found in three equivocal remarks made . . . during the course of a single conversation.").

Guthrie has alleged plausible, non-discrete acts of pervasive workplace harassment, of a continuing nature, sufficient to state a claim for gender-discriminatory hostile work environment under Title VII. Thus, the Bureau's motion to dismiss this claim will be denied.

/ / /

**II.** **The 1AC contains sufficient, plausible allegations that Guthrie's supervisors retaliated against her in response to her complaints of gender discrimination, so as to state a retaliation claim under a hostile-work-environment theory.**

Title VII also prohibits employers from retaliating against employees for opposing practices prohibited by Title VII. 42 U.S.C. § 2000e-3(a). A retaliation claim requires a plaintiff prove he or she (1) engaged in activity protected by Title VII, (2) sustained an adverse employment action, and (3) his or her protected activity was the "but for" cause of the adverse employment action. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Campbell v. Hagel*, 536 F. App'x 733, 734 (9th Cir. 2013) (citing *Nassar*, 570 U.S. at 362–63). As with the gender-discrimination claim (Section I), a court should look to the elements of the claim on a motion to dismiss but not require a pleading that satisfies the *McDonnell-Douglas* burden-shifting framework. *Carter*, 2018 WL 4810808 at *2 (citing *Swierkiewicz*, 534 U.S. at 515).

**A.** **Protected Activity and Pervasiveness of the Hostile Environment**

When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009); *see also Archuleta v. Corr. Corp. of Am.*, 735 F. App'x 238, 240 (9th Cir. 2018) (To determine protected conduct at the motion-to-dismiss stage, a plaintiff need only allege opposition to "conduct that could reasonably be perceived as violating Title VII[.]") (citing 42 U.S.C. § 2000e-3(a)). The protected activity cannot, however, be based on opposition to acts not constituting discrimination. *See Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir.1987) (finding that an employee's complaints about scheduling changes were not protected activity under Title VII). To demonstrate an adverse action based on a hostile-work-environment theory, a plaintiff must show the employer's response was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005) (*quoting Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000 (finding that a hostile work environment may be the basis for a retaliation claim under Title VII). An adverse employment action is one that would "reasonably deter employees from engaging in protected activity." *Id.*

As described in Section I, the 1AC and EEO Complaint detail an ever-escalating environment of abuse and hostility imposed upon Guthrie by her superiors, Estrada and Warden Rios; the Court has already determined Guthrie sufficiently alleged plausible non-discrete acts of workplace harassment, of a continuing nature, that were sufficiently pervasive, enough to state a claim for gender-based hostile work environment under Title VII. *See* Section I. Guthrie also asserts in the 1AC that she complained about this treatment starting in June 2008 and continuing through the fall 2009, first to her supervisors, then to the EEO Counselor. Doc. No. 19 at ¶ 10. Thus, Guthrie has adequately alleged she engaged in a protected activity. *Crawford*, 555 U.S. at 276; *Archuleta*, 735 F. App'x at 240; 42 U.S.C. 2000e-3; *see also Gutierrez v. Kaiser Found. Hosps., Inc.*, 2012 WL 5372607, at *6 (N.D. Cal. Oct. 30, 2012) ("While a plaintiff need not have invoked 'magic words' in order for his complaints to constitute protected activity, he must have alerted his employer to his belief that discrimination, not merely unfair personnel treatment, had occurred."). In so finding, the Court sifted out Guthrie's allegations concerning 'discrete' acts. *Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987) (finding that an employee's complaints about scheduling changes were not protected activity under Title VII)).

Guthrie then alleges that Estrada ratcheted up his adverse conduct against her because of her complaints about the gender-discriminatory conduct. Doc. No. 19 at ¶ 9; *see also* Section I (not repeated here, for brevity). Additionally, Guthrie alleges that shortly after Guthrie complained of the "Texas Long Horn" comment to her supervisors, Guthrie was "placed under 'investigation' regarding her computer use. *Id*. at ¶ 11. A computer tech at Atwater testified in a related administrative hearing he was repeatedly asked to unlawfully surveil Guthrie's computer— first by Estrada, then by Warden Rios. Doc. No. 19 at Ex. A, p. 1379, 1384-89 (Transcript of Administrative Hearing in *Kodger et al. v. Holder, DOJ, Bureau of Prisons*). The tech contended Estrada said to him "[n]obody's going to help me bust [Guthrie]. I can't get anybody to help me bust her." *Id*. at 1385, ¶¶ 24-25. Soon after, the tech said Warden Rios admonished him to "get with the program" concerning Estrada's request. *Id*. at 1389 ¶ 6. The Court takes the computer tech's statements, coupled with Guthrie's allegation of a 'false investigation,' in a light most favorable to Guthrie, *Faulkner*, 706 F.3d at 1019, and finds them illustrative of Guthrie's

allegations of retaliation (alongside her allegations as described in Section I).  *Cf. Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004) (finding the plaintiff adequately stated a hostile-work-environment adverse action where her supervisors subjected her to "retaliatory harassment in the form of verbal abuse and intimidation."); *EEOC v. AN Luxury Imports of Tucson, Inc.*, 2013 WL 12044519, at *4 (D. Ariz. Dec. 5, 2013) (denying summary judgment on the adverse-action prong of a retaliation claim, where the evidence showed plaintiff was falsely accused of poor job performance leading to his termination); *with Kortan v. California Youth Auth,* 217 F.3d 1104, 1112 (9th Cir. 2000) (affirming grant of summary judgment on retaliation claim where the plaintiff alleged she suffered an adverse action when her supervisors falsely accused her of failing to perform certain job duties, but no evidence existed to support this allegation).

Finally, the 1AC alleges Estrada rescinded or altered Guthrie's approved schedule requests, refused to approve overtime (despite approval for male employees), disciplined her for dressing down (despite male staff being dressed down), and excluded from official meetings (attended by male staff).  *Id*.  Guthrie asserts she was "repeatedly placed in unsafe situations without backup or support . . . and was denied training and advancement opportunities that her male counterparts were receiving."  *Id*.  These allegations add context to Guthrie's hostile work environment claim, and in some cases may be considered themselves an official part of her claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (unpleasant work assignments can constitute adverse decisions); *cf. also Strother v. S. Cal. Permanente Medic. Group*, 79 F.3d 859, 869 (9th Cir. 1996) (more burdensome work schedule and denial of administrative support demonstrate adverse decisions); *with Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987) (finding that an employee's complaints about scheduling changes were not protected activity under Title VII)).

### B.  But-For Cause

Finally, the Bureau contends the 1AC fails to allege facts indicating the retaliatory hostile work environment brought about by Estrada and Warden Rios was the "but for" cause of Guthrie's adverse employment action.  On this point, the Court could not disagree more with the Bureau.

A causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

The 1AC contains many allegations concerning the sexually-charged and retaliatory nature of work environment under Estrada and Warden Rios's tenure, as well as her assertions that she complained to her supervisors and, later, the EEO counselor. *See* Section I, II.A. Guthrie alleges that the conduct and her complaints occurred with such frequency that constitute a hostile work environment, and that her supervisors never did anything about Estrada's conduct. *See Pratt v. Hawai'i, Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1147 (D. Haw. 2018) ("Indeed, in some instances, causation can 'be inferred from timing alone where an adverse employment action follows on the heels of protected activity.'") (*quoting Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)). In one instance, Guthrie complained about Estrada's offensive "Texas Long Horn" comment, and "very soon after" she was subjected to a "false investigation" concerning her computer use. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (allowing inference of causation where the temporal connection is "very close."). While Guthrie fails to use the magic words "but-for" in the 1AC, the strong implication is that Guthrie was forced from her position at Atwater because of Rios and Estrada's conduct. *See Carter,* 2018 WL 4810808, at *2 (reminding that a Title VII plaintiff need not satisfy the *McDonnell-Douglas* burden-shifting framework at the motion to dismiss stage).

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 20) is DENIED; and

2. This case is referred back to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   December 7, 2018 ____     _____

SENIOR  DISTRICT  JUDGE