1

2

3

4

5

6

7  UNITED STATES DISTRICT COURT

8  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| LORENA GUTHRIE, | Case No. 1:18-cv-0282-BAM |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTIONS TO STRIKE |
| v. | |
| MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons, | (Doc. 65, 74, 79.) |
| Defendant. | |

Currently before the Court is a motion for summary judgment filed by Defendant Michael Carvajal ("Defendant") pursuant to Federal Rule of Civil Procedure 56. (Doc. 65). Also pending before the Court are: (1) Plaintiff Lorena Guthrie's ("Plaintiff") Request to Seal Documents (Doc. 72); (2) Defendant's Motion to Strike and Evidentiary Objections to Plaintiff's Opposition to Summary Judgment (Doc. 74): and (3) Plaintiff's Motion to Strike New Arguments Raised for the First Time in the Defendant's Reply Brief and Motion to Strike Portions as an Improper Motion for Reconsideration (Doc. 79).

The matter was heard before Magistrate Judge Barbara A. McAuliffe via video conference on February 19, 2021.[1] Counsel Kevin Little appeared by video conference on behalf of Plaintiff Lorena Guthrie. Counsel Joseph Frueh appeared by video conference on behalf of Defendant

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. (Docs. 5, 41, 43, 45.)

1

1    Michael Carvajal.

2         Having considered the record, the parties' briefing and arguments, and the relevant law,

3    Defendant's motion for summary judgment will be denied.  Further, for the reasons explained

4    below, the parties' motions to strike and Plaintiff's request to seal documents also will be denied.

5    **I.    INTRODUCTION**

6         Plaintiff Lorena Guthrie, a former employee of the Federal Bureau of Prisons, claims that

7    between May 2008 and October 2009, she was subjected to a hostile work environment

8    engendered by two of her superiors at the U.S. Penitentiary in Atwater, California.  (Doc. 19.)

9    This action proceeds against Michael Carvajal, Director of the Federal Bureau of Prisons, in his

10   official capacity.[2]

11        According to the First Amended Complaint, filed on September 10, 2018, Plaintiff began

12   working for the Bureau of Prisons in September 2001, and in 2004 was promoted to the Special

13   Investigative Support ("SIS") Unit, which investigated criminal conduct within the prison.  (Doc.

14   19 at ¶ 6.)  She reportedly excelled in the position, and simultaneously pursued a nursing degree,

15   with the goal of transitioning into the Bureau's Health Care Administration.  (*Id.* at ¶¶ 6-7.)

16        In April 2008, Plaintiff's supervisor was replaced by Jesse Estrada, a longtime friend of

17   the new Warden, Hector Rios.  (*Id.* at ¶ 8.)   Almost immediately, the character of the institution

18   "changed dramatically," where "female employees were systematically undermined, unless they

19   dressed provocatively, slept with male staff, or acquiesced to stereotypical female roles and

20   duties." (*Id.*)  Plaintiff was subjected to "repeated acts of discriminatory harassment based on her

21   gender that collectively created a hostile environment." (*Id.*).  Plaintiff was repeatedly referred to

22   as a "fat cow" and other insulting terms by Estrada, exposed to inappropriate sexual commentary

23   and gender discriminatory commentary by him, ordered by him to clean the office and

24   workspaces of her male colleagues, harassed for not making or bringing him coffee, singled out

25   for baseless criticism in the presence of her fellow SIS officers, given less desirable duties

26   _____

27   [2]      According to Plaintiff, the parties agree that Attorney General William P. Barr, or his successor, is the proper defendant under 42 U.S.C. § 2000e-16(c), since the Federal Bureau of Prisons is part of the Department of Justice, pursuant to 18 U.S.C. § 4042.  (Doc. 69 at 1 n. 1.)  Plaintiff has requested the Attorney General's substitution

28   pursuant to FRCP 25(d), and Defendant does not oppose this request. (*See* Docs. 62, 63.)

typically given to more junior SIS officers, relegated in the SIS chain of command behind less tenured officers, denied overtime authorized for similarly situated male SIS officers, denied training opportunities authorized for similarly situated male SIS officers, excluded from briefings and other meetings attended by male SIS officers, being pressured to seek a transfer out of the SIS Unit, given falsely negative performance reviews and work assessments, denied requests to alter her work schedule afforded to male SIS officers, denied backup afforded to male SIS officers for equally potentially dangerous assignments and sent home prior to the end of her shift for unfairly punitive reasons.  (*Id.* at ¶ 9.)

Prior to making her informal complaint of discrimination to an EEOC counselor on September 15, 2009, Plaintiff complained to her immediate and ultimate supervisors from June 2008 through the fall of 2009, and she began making complaints to her EEO counselor beginning in November 2009.  She further complained by initiating the formal EEOC process in the fall of 2010.  Despite her complaints, the gender hostile work environment continued, and retaliatory harassment began to occur beginning in the second half of 2008 on "virtually a daily basis."  (*Id.* at ¶ 10.)   She was sneered and scoffed at, had her suggestions and input ignored, was repeatedly placed in unsafe situations without backup or support, was constantly hassled about her schedule and her need to attend classes, and was denied training and advancement opportunities that her male counterparts were receiving.  (*Id.*)

Plaintiff was then subjected to a retaliatory "investigation" regarding her office computer use in the fall of 2009.  This investigation was instituted very soon after she complained about Estrada's making an insulting and sexually inappropriate comment about a picture of Plaintiff and her Caucasian husband on her desk, stating that she must have never "had a Texas longhorn."  (*Id.*  at ¶ 11.)

Plaintiff alleges that the allegation underlying the investigation into her computer use was baseless, i.e., that she had been accessing pornography on her office computer.  Plaintiff also asserts that the investigation was in violation of Bureau of Prisons policy, which required investigations of individual use computers to be approved by the Bureau's Central Office.  When the Systems Information Technician, Charles Carstersen informed Estrada and Rios of that

policy, they sought to intimidate him into nonetheless initiating the investigation. By contrast, Rios did no investigation into Plaintiff's allegations of inappropriate conduct by Estrada, other than asking him if it occurred. In the EEOC proceeding, Estrada and Rios, now both ex-employees of the Bureau of Prisons, testified and acknowledged the retaliatory nature of the investigation into Plaintiff's computer use. (*Id.* at ¶¶ 11-13.)

In November 2009, Plaintiff resigned from the Bureau of Prisons, suffering mentally because of the prolonged mistreatment and concerned that Warden Rios' administration would terminate her based on false allegations of misconduct. (*Id.* at ¶ 14.) She submitted a Charge of Discrimination with the Department of Justice EEO in March of 2010. (*Id.* at ¶ 3.)

The first amended complaint alleges Title VII claims of gender discrimination and retaliation, each under a theory of hostile work environment. (*See generally* Doc. 19.)

On October 23, 2020, Defendant moved for summary judgment on Plaintiff's claims as a matter of law. (Doc. No. 65.) Plaintiff opposed the motion on December 11, 2020. (Docs. 69-71.) Plaintiff also filed a Request to Seal Documents, which identifies the documents as photo attachments to the supplemental declaration of Judith Dreher. (Doc. 72.)

On December 23, 2020, Defendant filed a motion to strike and evidentiary objections to Plaintiff's Opposition to the Motion for Summary Judgment. (Doc. 74.) The motion to strike included an objection to the supplemental declaration of Judith Dreher and attachments. (*Id.*)

On January 8, 2021, Defendant filed a reply in support of the motion for summary judgment. (Doc. 75.)

On January 14, 2021, Plaintiff filed a response to Defendant's motion to strike. (Doc. 77.) Subsequently, on January 15, 2021, Plaintiff filed a motion to strike new arguments raised for the first time in the Defendant's reply brief and to strike portions as an improper motion for reconsideration. (Doc. 79.) On the same date, Defendant filed a reply in support of Defendant's motion to strike. (Doc. 81.) On February 15, 2021, Defendant opposed Plaintiff's motion to strike. (Doc. 83.)

///

///

## II. DEFENDANT'S MOTION TO STRIKE AND EVIDENTIARY OBJECTIONS TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

### A. Motion to Strike

Defendant moves to strike the following documents offered by Plaintiff in opposition to Defendant's Motion for Summary Judgment:

(1) Attachments to the Supplemental Declaration of Judith Dreher, Exhibit F to the Declaration of Kevin G. Little (ECF 71);

(2) Exhibit H to the Declaration of Kevin G. Little (ECF 71), "Dept. of Justice Final Corrected Order, dated December 12, 2017":

(3) Exhibit I to the Declaration of Kevin G. Little (ECF 71), "Opinion and Order Following Evidentiary Hearing";

(4) Exhibit J to the Declaration of Kevin G. Little (ECF 71), "U.S. Equal Employment Opportunity Commission, Final Program Evaluation Report, Federal Bureau of Prisons (2010)";

(5) Exhibit K to the Declaration of Kevin G. Little (ECF 71), "Report of the Majority Staff, House Subcommittee on National Security, Independent Investigations and Employee Discipline at the Bureau of Prisons (2019)";

(6) Exhibit L to the Declaration of Kevin G. Little (ECF 71), "Dept. Of Justice, Fed. Bureau of Prisons, Office of Internal Affairs, Report for Fiscal Year 2017";

(7) Exhibit M to the Declaration of Kevin G. Little (ECF 71), "U.S. Department of Justice, Office of the Inspector General Evaluation and Inspections Division, Review of the Federal Bureau of Prisons' Disciplinary System, Report Number I-2004-008";

(8) Exhibit N to the Declaration of Kevin G. Little (ECF 71), "Excerpt of Transcript of EEOC Proceedings."

(Doc. 74-1 at 6.)

Defendant seeks an exclusionary sanction pursuant to Federal Rule of Civil Procedure 37 to preclude consideration of these documents submitted in support of the motion because they were not disclosed in advance. Rule 26(a) of the Federal Rules of Civil Procedure requires parties to disclose a copy or description of all documents that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Parties also are required to supplement any incomplete or incorrect disclosures in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) provides that a party who fails to provide information required by Rule 26 "is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." The Ninth Circuit has explained that "even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). Generally, this rule acts as a "self-executing . . . and automatic sanction to provide a strong inducement for disclosure of material." *Id.* (citations and internal quotation marks omitted). Nonetheless, the Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Id.*

Defendant contends that the identified documents were not disclosed pursuant to Rule 26. According to Defendant, Plaintiff served her most recent disclosures on August 30, 2019, but those disclosures failed to identify these documents. Defendant further contends that whether a document is publicly available or in the opposing party's possession is not relevant and Plaintiff was required to identify the documents she may use to support her claims or defenses. (Doc. 74-1 at 6-7.) Defendant asserts that Plaintiff's failure to identify the documents now proffered to oppose summary judgment is prejudicial. (*Id.* at 7.)

Plaintiff, in turn, indicates that the documents at issue were obtained from third-party witnesses in December 2020, and the initial disclosure requirements of Rule 26 only require a party to disclose the identities of potential witnesses and to disclose documents in her possession, custody or control. Plaintiff asserts that she obtained declarations and documents from declarants Glen Cobb, Roberto Dreher, Ken White, Lourdes Mettry, Kathy Burghardt-Cobb and Judith Dreher in December 2020. Plaintiff explains that disputed Exhibits H-N and the two photographs at issue were all part of the EEOC files of declarants Burghart-Cobb, Mettry and Dreher, and these declarants were not requested to disclose and did not authorize the disclosure of any of the documents from their EEOC proceedings or the two photographs until they were requested by Plaintiff's counsel in 2020. (*Id.* at n.3.) Plaintiff contends that she was not obligated to obtain these documents prior to Defendant's motion for summary judgment and asserts that she disclosed these witnesses in her April 12, 2019 initial disclosures. (Doc. 77 at 3.) Plaintiff avers

that Defendant failed to perform any discovery related to these witnesses and did not depose or

subpoena documents from any of the third-party witnesses.  (*Id.*)  Plaintiff concludes that

Defendant cannot use Rule 37(c) to preclude information that was not in Plaintiff's possession,

custody or control.

Defendant challenges Plaintiff's representations regarding the subject documents, noting

that Plaintiff's counsel filed many of the same exhibits on the public docket in another federal

lawsuit, *Burghardt-Cobb v. Inch*, E.D. Cal. No. 1:17-cv-01563-DAD-SKO, in August 2019, and

offered the attachments to the Supplemental Declaration of Judith Dreher in another proceeding

in June 2015.  (Doc. 81 at 2, n. 2.)

The Court has reviewed and considered the documents and attachments at issue.  With

respect to the attachments to the Supplemental Declaration of Judith Dreher, Exhibit F to the

Declaration of Kevin G. Little (ECF 71), which are also the subject of Plaintiff's Request to Seal

(Doc. 72), these attachments are photographs unrelated to the events alleged in this action.[3]  They

have not been considered by the Court in reaching its determination on Defendant's motion for

summary judgment and, as the photographs have not been filed, it is not necessary to strike them

from the record.  Defendant's motion to strike as to Exhibit F is therefore denied as moot.

Exhibits H is a U.S. Department of Justice Corrected Final Order in the matter of *Kathy*

*Burghardt-Cobb, Judith A. Dreher, Kimberly Kodger, Lourdes Mettry v. Federal Bureau of*

*Prisons*, dated December 12, 2017.  Exhibit I is the Opinion and Order Following Evidentiary

Hearing of the EEOC dated September 30, 2017, re *Complaints of Kathy Burghardt-Cobb, Judith*

*A. Dreher, Kimberly Kodger, Lourdes Mettry v. Jeff Sessions, Attorney General United States*

*Department of Justice*.  In Exhibit H, the U.S. Department of Justice accepted the administrative

law judge's finding that complainants Burghardt-Cobb, Dreher, Kodger and Mettry were

---

[3]  On December 11, 2020, Plaintiff filed a request to seal the photo attachments to the Supplemental Declaration of Judith Dreher pursuant to Local Rule 141.  (Doc. No. 72.)  Plaintiff requested sealing because the photographs "pertain to persons who are law enforcement officers and are also not appropriate in terms of their content to become matters of public record."  (*Id.* at 1.)  Plaintiff sufficiently described the content of these photographs in the Supplemental Declaration of Judith Dreher.  (*See* Doc. No. 71, Ex. F at ¶ 3.)  Having considered Plaintiff's submission, the Court finds the photographs unrelated to the events alleged in this action and has not considered them in reaching the instant decision.  Accordingly, Plaintiff's request to seal these documents is unnecessary and is DENIED as moot.  The photographs at issue do not need to be filed on the record or under seal.

subjected to discrimination and a hostile work environment based on sex, and that complainant Kodger was also subjected to retaliation for having engaged in EEO activity. (Doc. 71, Ex. H at 2.) As detailed in Exhibit H, the facts of the case centered on "Hector A. Rios, Jr., . .. his treatment of the complainants, and the demeaning and dangerous environment he created in the process. The complainants were each high-performing department heads at USP Atwater . . . [and] the only female department heads." (*Id.* at 3.) Exhibit I is the administrative law judge's opinion finding complainants were discriminated against on the basis of their sex and subjected to unlawful harassment, and that complainant Kodger was subjected to reprisal. (Doc. 71, Ex. I.) These documents do not involve the events alleged by Plaintiff in the SIS unit, and she was not a female department head at USP Atwater. The Court has not relied on these documents in reaching its determination and it is not necessary to strike them. Defendant's motion to strike is therefore denied as moot.

With respect to Exhibits J, K, L and M, these documents generally concern the Bureau of Prisons nationwide and are not specific either to USP Atwater or to Plaintiff's claims and factual allegations. (*See* Doc. 71, Ex. J at 3 ("In order to make this assessment, [the Office of Federal Operations] sent a questionnaire to each of BOP's more than 35,000 employees . . . and chose three BOP facilities [Victorville, California; Butner, North Carolina; and Lexington, Kentucky] at which to conduct onsite reviews and employee interviews."), 9; Ex. K at 4–7 (discussing allegations at a southern BOP facility and a northern BOP facility); Ex. L (providing metrics and case studies from BOP's Office of Internal Affairs for fiscal year 2017). Further, both Exhibit L and Exhibit M are outside the relevant timeframe at issue here. (*See* Doc. 71, Ex. L (BOP's Office of Internal Affairs Report for fiscal year 2017); Ex. M at i (dated September 2004; "We examined data for BOP employee misconduct cases opened or closed in fiscal year (FY) 2003 . . . ."). The Court therefore finds these documents not relevant and has not relied on them in reaching its determination on Defendant's motion for summary judgment. It is not necessary to strike these documents from the record and Defendant's motion to strike as to Exhibits J, K, L, and M is therefore denied as moot. Defendant's objections to these documents on the grounds of relevance, however, are sustained. (Doc. No. 74-1 at 22-23.)

Exhibit N is an excerpt of the Administrative Hearing testimony of Mr. Carstersen, Estrada and Warden Rios proffered in connection with the complaints of Kimberly A. Kodger, Kathy Burghardt-Cobb, Judith Dreher, and Lourdes Mettry.  (Doc. No. 71, Ex. N.)  This appears to be the same transcript and testimony appended as Exhibit A to the First Amended Complaint concerning the investigation of Plaintiff's computer use.  (Doc. 19, Ex. A.)  Accordingly, any request to strike based on untimely disclosure lacks merit.  Defendant's motion to strike this exhibit is therefore denied.  Defendant's companion objection on authentication grounds is overruled as Plaintiff lodged a copy of the complete transcript of the administrative hearing.  (*See* Doc. 78.)

**B.  Evidentiary Objections**

Defendant also forwards various evidentiary objections to portions of the declarations of Glenn Cobb, Robert Dreher, Ken White, Lourdes Mettry, Judith Dreher, and Kathleen Burghardt-Cobb.  Defendant also asserts evidentiary objections to Exhibits H, I, J, K, L, M and N to the Declaration of Kevin Little and to portions of Plaintiff's cited deposition testimony.  It is not this Court's practice to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted. Objections that are material and meritorious have been sustained. *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F.Supp.2d 1198, 1200 n. 1 (C.D. Cal. 2010) (noting that it is often unnecessary and impractical for a court to methodically scrutinize and give a full analysis of each evidentiary objection on a motion for summary judgment); *Burch v. Regents of the Univ. of Cal.*, 433 F.Supp.2d 1110, 1118–22 (E.D. Cal. 2006).  Defendant's objections are addressed in general terms.

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and "[the court] cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch* 433 F.Supp.2d at 1119. Unless otherwise noted, the Court overrules relevance objections at this stage, without prejudice.

Defendant's hearsay objections are likewise overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible

form at trial. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"[O]bjections to the *form* in which the evidence is presented are particularly misguided where, as here, they target the non-moving party's evidence." *Burch*, 433 F. Supp. 2d at 1119 (emphasis in original). The Court also will not sustain hearsay objections and they are overruled without prejudice.

### III. PLAINTIFF'S MOTION TO STRIKE NEW ARGUMENTS RAISED FOR THE FIRST TIME IN THE DEFENDANT'S REPLY BRIEF AND MOTION TO STRIKE PORTIONS AS AN IMPROPER MOTION FOR RECONSIDERATION

Plaintiff argues that Defendant's reply brief should be stricken because it contains new arguments and inappropriately seeks reconsideration of an issue previously addressed at the motion to dismiss stage. Specifically, Plaintiff moves to strike purportedly new arguments in the reply brief on page 1, lines 21-25 and Section II.A in which Defendant complains that Plaintiff has raised new incidents of inappropriate sexual commentary. (Doc. 79 at 1-2.)

In particular, on page 1, lines 21-25, Defendant argues as follows:

> Plaintiff cannot salvage her sexually hostile work environment claim with two new incidents she failed to allege in her administrative and federal complaints. And even if the Court were to consider them, they are not so "extreme" as to establish an "abusive" workplace "permeated with discriminatory intimidation, ridicule, and insult." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

(Doc. 75 at 3.) Similarly, in Section II.A, Defendant argues that Plaintiff cannot salvage her sexually hostile work environment claim by offering "new allegations about Estrada 'thrusting' in her doorway and saying she should be 'bent over in a kitchen, or with her legs up in the air." (*Id.* at 4.) Defendant contends that these allegations were not included in her administrative complaint, but even if they were, they are not sufficiently severe or pervasive.

The Court finds that Defendant's reply responds directly to incidents cited in Plaintiff's opposition to summary judgment. Specifically, Plaintiff's opposition alleges that "Estrada . . . sometimes [made] thrusting motions while making other sexually inappropriate comments" and "Estrada also told Plaintiff she should be at home bent over in a kitchen, or with her legs up in the air." (Doc. 69 at 5.) Plaintiff's opposition also includes assertions that "plaintiff had to deal on a regular and ongoing basis with a supervisor who subjected her to mean-spirited, hip-thrusting

10

sexual commentary, related to her husband's genitals, or her needed to be bent over or have her legs in the air." (*Id.* at 13.) The Court finds Defendant's references and arguments concerning these allegations are an appropriate response to assertions made in Plaintiff's opposition. *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1106 n.14 (9th Cir. 2003) (denying motion to partially strike reply brief where "[t]he 'new' arguments raised in the . . . reply brief were a reasonable response to points made in the . . . answering brief"); *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Research Inst.*, No. 19-5784, 2020 WL 1548513, at *4 n. 9 (N.D. Cal. Mar. 5, 2020) ("Senior-China's arguments are not new. They are a direct response to the arguments in Celgard's opposition."). Insofar as Defendant challenges the two new incidents as not within the scope of the EEOC complaint, the Court addresses that challenge *supra*.

Plaintiff also moves to strike these same portions of the reply brief, arguing that they seek inappropriate reconsideration of the district court's order denying Defendant's motion to dismiss. (Doc. 79 at 2-3.) However, the district court's order did not consider the new incidents presented in Plaintiff's opposition to summary judgment.

For these reasons, Plaintiff's motion to strike portions of Defendant's reply is DENIED.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Undisputed Material Facts

Unless otherwise noted, the facts set forth below are uncontroverted.[4] As necessary, the

---

[4] In determining which facts are undisputed, the Court relies on the Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment (Doc. 65-2), Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment (Doc. 70), and Defendant's Response to Plaintiff's Statement of Disputed Facts (Doc. 75-1). The Court also relies on the parties moving papers, including exhibits filed in support of both Defendant's motion for summary judgment and Plaintiff's opposition. (Docs. 65, 71.) Unless otherwise noted, only those facts not genuinely disputed by the parties are included. For many facts in Defendant's Statement (Doc. 65-2), Plaintiff failed to directly respond to the specific fact proffered by Defendant, *i.e.*, DSUF 4, 7, 9- 12, 16-17, 20-21.

Insofar as Plaintiff's briefing cites to her deposition testimony, she has not complied with this Court's Local Rules. Specifically, Plaintiff has failed to submit relevant portions of her deposition intended to become part of the official record as exhibits in support of her opposition to summary judgment. *See* L.R. 133(j) ("Pertinent portions of the deposition intended to become part of the official record shall be submitted as exhibits in support of a motion or otherwise"); 250.1(a); 260(e). Plaintiff instead references only the deposition transcript lodged with the Court by Defendant. Unless otherwise noted, citations to Plaintiff's deposition testimony are based on the lodged deposition transcript.

Court discusses further factual details in its analysis. The parties' legal conclusions, arguments, and assertions are not considered facts.

Plaintiff joined the SIS Unit as an SIS Tech in 2004. (Doc. 65-11, Ex. 7 at 4.) A function of the SIS Unit is collecting intelligence about inmate activity that could threaten prison security. (*Id.* at 23.) The SIA oversees the SIS Techs with some additional oversight from Lieutenants and a Captain. (*Id.* at 51–54; Docs. 65-12, Ex. 117 at 2; 65-13, Ex. 118 at 2; *see also* Doc. 65-2, Estrada Decl. ¶¶ 12, 25–27.)

In 2007, Plaintiff enrolled in a licensed vocational nurse ("LVN") training program. (Doc. 65-2; Defendant's Statement of Undisputed Facts ("DSUF") 1.) To accommodate her LVN program, Plaintiff received an alternative work schedule from Special Investigative Agent ("SIA") C.D. Cole and Warden D. Smith. (DSUF 2.) Under her alternative work schedule, Plaintiff worked primarily on weekends and at night, when the SIA was not present.[5] (DSUF 3.) Plaintiff would spend 50 to 80 percent of her time in the SIS office handling administrative tasks, such "[p]hone monitoring, camera coverage, pipelines, reports, posted-picture," and reviewing and completing "two-hour watch cards." (DSUF 4.) According to Plaintiff, she spent 70 to 80 hours each week on her LVN program. (DSUF 5.)

In April 2008, Jesus Estrada arrived at USP Atwater, as the new SIA. (DSUF 6.) There were only two SIS Techs in the entire unit, one of whom was Plaintiff. (Doc. 65-11, Ex. 7 at 9; Doc. 65-2, Estrada Decl. ¶ 3.) Estrada allowed Plaintiff to continue her alternative work schedule until she obtained her LVN license. (DSUF 7.) On a case-by-case basis, he also granted her leave and changes to her schedule to allow her to study and take exams. (*Id.*) Plaintiff obtained her LVN license in May 2009. (DSUF 8.)

After receiving her LVN license in May 2009, Plaintiff wanted to continue her education and training toward becoming a Registered Nurse, with plans to then become a nurse practitioner. She thus requested another alternative work schedule from Estrada. (DSUF 9.) There were no LVN positions at the prison, and the SIS Unit had no healthcare positions. (DSUF 11.) When

---

[5] Plaintiff overlapped with Estrada each day and had daily contact with him. (Lodged Deposition Transcript of Lorena Guthrie ("Guthrie Depo.") at 63:21-64:24; 245:15-246:12.)

Estrada did not approve Plaintiff's alternative work schedule, Plaintiff sought approval from Captain William Lothrop, but was unsuccessful.  (Doc. 65-2, Estrada Decl. ¶¶ 24-26; Docs. 65-6, Ex. 3; 65-7, Ex. 4.)

As of May 2009, the SIS Techs were bargaining-unit employees, *i.e.*, unionized.  An employee could not receive an alternative work schedule or other benefits that were not uniformly available to other employees and sanctioned by the union.  An employee could obtain occasional, case-by-case scheduling changes consistent with workload and staffing levels, but no official and long-term alternative work schedules.  (DSUF 10.)  Lieutenant Glenn Cobb sent an e-mail to the SIS Unit on September 17, 2009, explaining that "[e]xtended time off or changes in work schedule will need some sort of documentation justifying the need to deviate from the current schedule and have to be routed through the immediate supervisor, SIA/Captain, [Associate Warden,] and Warden. Also the blessing of the Union since the staff are now bargaining." (DSUF 12; Doc. 65-8, Ex. 5.)

On the same day, September 17, 2009, Plaintiff contacted an EEO counselor alleging discrimination.  (DSUF 13; Doc. 65-19, Ex. 128.)  In a type-written attachment dated September 15, 2009, she identified, among others, the following issues:

- **September 2008,** Arrive to work Thursday at 3:30 pm, SIA Estrada states as he passes me in the hall way, "where were you this morning my coffee wasn't made," laughing.
    …
- **August 11, 2008**- SIA Estrada states I am not allowed to work Morning Watch overtime in custody.  States no overtime being authorized as per Captain Lothrop.
- **August 12, 2008,** SIS Tech Valero working custody post not in SIS Dept.  Per SIA Estrada authorized to work custody then SIS Office.  Contract Captain Lothrop about denied Overtime, he states he knows nothing about it and that I could work overtime if I want.
- **July 30, 2008,** SIA Estrada states "Guthrie your third in charge, first Cobb then "Z" (SIS Technician), just thought you should know.
- **July 2, 2008,** SIA Estrada states in front of staff in SIS Office directly to me. "Guthrie, AW Bell was discussing your attire during lockdown with me and wants to know who authorized you to dress down." [everyone in office of was dressed down].
- **July 2, 2008,** AW Bell responds to my apology email to him for my attire and disrespect.  In the email he states he stated no such thing and felt bad about the comment made by SIA Estrada, I was not mentioned.
- **June 2008,** … SIA Estrada calls for everyone in the office to follow him to the Wardens Conference room, he wants to introduce the SIS Staff.  Mr. Estrada tells me to stay in the office.  All male staff in the office walk out with the SIA.
- **May 2008,** SIA Estrada notices photo of my husband and daughter on my computer

13

and states, "Oh your husbands white" I state "Yes, why?" SIA Estrada states "Guess you've never had a Texas Long Horn." and walks away smiling.

- **September 8, 2009**, Informed by SIS Technician Datray, that SI Estrada entered office on 9/4/09 and stated "your sister is giving me grief."
- **September 4, 2009**, 07:10 am SIA Estrada stops by my office door and states "Did the Captain authorize you to be here?." I state "Yes", we go through this every Friday morning."
- **September 4, 2009**, 07:45 am, SIA walks into his office and calls out for me to come to his office. Upon entering the SIA states I need you to go home and come back at 2pm, because the Captain didn't give authorization. I Request to meet with Captain and SIA and was denied because Captain was off today.
- **September 5, 2009**, Email from Captain dated Sept 4, 2009 at 1:17 pm stating he never approved a permanent schedule change only for 2 days.
  …
- **August 2009**, Captain acknowledges in front of SIS Tech Dacray, and Lieutenant Cobb that the schedule change on Fridays is ok, don't worry.
- **August 2009,** Captain enters my office states what schedule do you need. I informed him it was just Friday changed from pm to am, that's all through December 1st. Captain states ok I will take care of it . After this you guys in the office need to figure it out. Estrada state you never come to him , you skip him and bring memos to me. I informed the captain that I take memos to the SIA always, but he doesn't even look at them he just states No, your Union and I can't approve this.
- **August 5, 2009**, request submitted to SIA Estrada for a 1 day a week shift request change from am to pm. Denied and refused to sign. Same day approached Captain Lothrop for review and approval. Captain Lothrop states "Don't worry its ok" Again I state I don't want to encounter any problems over this. Captain states "No, you won't I will talk to Estrada." Captain states he doesn't need to sign memo it will be ok.
- **Conformation** Email to Captain about schedule change for Fridays prior to being sent home by SIA Estrada.
- **August 14,** 09, approximately 7:09 am, SIA Estrada , asks what I am doing at work, I informed him the Captain authorized it and the Union was notified, he states No. I explain to him SIS Tech Valero has his scheduled altered for Sunday from AM to PM what's the big deal about adjusting my Friday. Mr. Estrada states he will need to change that then.
- **August 6, 2009,** Email to the Captain confirming once again the approved hours for Friday.
- **May 13, 2009**, SIA Estrada denies request for fall school schedule , States that because I am bargaining unit he can't approve it. I inform Mr. Estrada I am Bargaining Unit. SIA states " well then I can't because your Bargaining Unit staff. He further states the old Warden signed it but this Warden won't.
- **February 13, 2009,** SIA Estrada states " you will conduct bus interviews with SIS Technician Zaragoza and himself today, you've been allowed to attend interviews" and walks away.
- **February 13, 2009,** SIA Estrada states " Have you spoken with Mrs. Mettry?" I state "No .. ..I haven't spoken to anyone, I just go here on Evening watch. "SIA Estrada states " she has a nursing position opening"
- **February 13, 2009,** SIA Estrada states to SIS Technician while departing the bus interview "Z" "come on lets go have a drink." SIS Technician states " I don't even drink." SIA Estrada States " that's ok just buy my drinks because I don't have any money."
  …
- One bus interview with SIS Technician Datray, SIA kept stating "no you can do it alone Datray." Datray stated to SI no I need someone to do photos. SIA States

14

whatever.
- SIA Estrada verbally and out loud acknowledges SIS Lieutenant Zaragoza (then SIS Technician) and SIS Technician Valero as his "Son's, and has to look out for them because they are just like him.
- October 15, 2009, Charlie Carsterson, notifies me that earlier today Warden entered his office and stated, "This is a one way conversation, you will find something on Guthrie". More info Charlie didn't get to talk about in building.

(Doc. 65-19, Ex. 128 at 3-5) (unedited text).

Plaintiff also complained of daily non-acknowledgement as being a part of the SIS office and no communication by SIA Estrada. She reported that Estrada addressed staff with information by turning his back to her and "speaking to all male staff in the office." (Doc. 65-19, Ex. 128 at 3-5.) Plaintiff also reported that emails for requested assignments are for past due items and intelligence communications are limited to the "A Team" email that Estrada sends out. Plaintiff asserted that bus interviews are only conducted by the SIA and male staff and overtime is paid for other technicians to stay for bus interviews even though Plaintiff is in the office on her scheduled shift.[6] (Id. at 5.)

In October 2009, Plaintiff was searching for an online article from a local newspaper using her government-owned computer in the SIS office. When she found the article, pornography suddenly appeared on the screen, and it seemed that her workstation had downloaded a computer virus or other malware. (DSUF 20; Doc. 65-11 at 189-90.) Estrada did not discuss Plaintiff's computer incident with Plaintiff. (DSUF 21.) After learning of this incident, Estrada asked one of the prison's information technology specialists, Charles Carstersen, to scan Plaintiff's government-owned computer. (Doc. 65-3, Declaration of Jesus M. Estrada ("Estrada Decl.") at ¶¶ 38-39.) Carstersen told Estrada that prison policy prohibited scanning the computer. (Id. at ¶ 39.) Estrada raised the issue with the Warden. (Id.)

Carstersen contacted Plaintiff on October 15, 2009, about Estrada's and the Warden's interest in her computer. (Doc. 65-11, Ex. 7 at 102-103.) Carstersen reportedly told Plaintiff she

---

[6]    Plaintiff additionally complained that all staff, except her, had "received training of some sort either sent or received it in the form of attending SHU meetings." (Id.) She had yet to attend a SHU meeting and her training was limited to what was given "during ART only." (Id.) According to Defendant, training opportunities within the Bureau of Prisons are advertised and administered the National Corrections Academy and Staff Training Academy, for which employees have to sign up. Estrada had no role in selecting employees for training. (DSUF 16.) Plaintiff reportedly recalled only one specific instance where she signed up for training and allegedly was not selected, and she had attended that same training course a few years earlier. (DSUF 17.)

15

"need[ed] to be careful" because "[t]he warden is after you and so is SIA Estrada. . . they're trying to get me to pin you on something, to put something in the computer to pin you." (*Id.* at 103.) The same day that she spoke with Castersen, Plaintiff contacted Valerie Stewart, an employee with the Bureau of Prisons whom Plaintiff perceived to be "in a position of authority." (*Id.* at 121-23.) Plaintiff asked Stewart "what is the best thing to do because I don't want to ruin my career." (*Id.* at 121.) Stewart reportedly advised Plaintiff to resign. (*Id.* at 121, 123.) Plaintiff submitted a letter of resignation from the BOP on October 16, 2009, with an effective date of November 20, 2009. (Doc. 65-23.) Plaintiff filed a formal administrative Complaint of Discrimination on March 25, 2010. (DSUF 22.)

### B. Plaintiff's Deposition Testimony

In Plaintiff's deposition, she testified that she complained about Estrada to supervisors, including Lieutenants, a Captain, and an Associate Warden. (Guthrie Depo. at 115:19-116:16 (generally testifying that she spoke to lieutenants, Associate Warden and Captain about continuous and ongoing comments; no recollection of complaining about Long Horn comment to specific person); 241:12-18 *(*prior to 9/4/2009 email to Captain Lothrop, she had discussed "harassment" with him because it was continuous and ongoing; Associate Warden and lieutenants also were aware.) However, Plaintiff asserted that the mistreatment remained continuous and ongoing throughout the remainder of her BOP tenure. (Guthrie Depo. at 109:11-15; 118:5-18; 120:14-25; 137:8-15; 163:8-17; 203:19-204:9.) Warden Rios was also rude and made sexist comments to Plaintiff when she encountered him. (Guthrie Depo. at 187:1-188:11.)

Plaintiff further testified that beginning in May 2008, Estrada made offensive sexual comments to her, including about her never having had a "Texas Longhorn" and sometimes making thrusting motions while making other sexually inappropriate comments. (Guthrie Depo. at 110:9-111:5; 204:6-18. Plaintiff understood the "Longhorn" comment to refer to her Caucasian husband and his purported penis size. (Guthrie Depo. at 113:17-24.) Plaintiff additionally testified that Estrada told Plaintiff she should be at home bent over in a kitchen, or with her legs up in the air. (Guthrie Depo. at 119:21-120:4; 154:7-19; 203:19-24; 204:6-18.) Estrada made other offensive comments to Plaintiff, including calling her a "fat cow" in front of

other staff. Guthrie Depo., 111:6-17; 115:23-117:12; 118:12-16; 154:7-19; 202:22-203:9.) Estrada also made ongoing comments about Plaintiff having to make coffee for the unit or cleaning the unit, requests that were not made of the male staff. (Guthrie Depo. at 135:9-137:15; 201:9-202:9; 205:1-24.) Estrada also made comments sexualizing other female staff in Plaintiff's presence that she found offensive. (Guthrie Depo. at 138:15-142:7.)

### C. Witness Statements

Glen Cobb, a supervisor in the SIS Unit at USP Atwater while Plaintiff worked there, generally declared that Plaintiff was the target of frequent, consistent singling out and inferior treatment. (Doc. 71, Ex. A, Declaration of Glen Cobb ("Cobb Decl.") at ¶¶ 1, 4.) He specifically recalled that when Plaintiff to complained to Estrada, he would comment to his male cohorts in the unit that their "sister" was "giving him grief." He also heard Plaintiff being asked either to make coffee or being berated for not making coffee, but he did not hear similar comments to male staff. Mr. Cobb also declared that Plaintiff was almost exclusively limited to desk duty, routinely excluded from emails about scheduled training opportunities, excluded from daily briefings, and denied shift changes while other male employees were accommodated. (*Id.* at ¶ 5.)

Ken White, a former Lieutenant at USP Atwater, also generally declared that he witnessed or overheard Plaintiff be the target of singling out and inferior treatment, and the perpetrator of this mistreatment was SIA Estrada or one of the male SIS Technicians, and on some occasions even Warden Rios. (Doc. 71, Ex. C, Declaration of Ken White ("White Decl.") at ¶¶ 1, 4.) He also heard Plaintiff be the target of derisive comments by male SIS Unit staff, such as references to her weight and appearance. (*Id.* at ¶ 4.) Mr. White generally recalled that Plaintiff "reported complaining about the inferior treatment that she received, but without any changes being made." (*Id.*) Mr. White further declared that Plaintiff attempted to pick up some additional overtime shifts under his supervision. Plaintiff had already obtained the approval of her supervisor, Lieutenant Glen Cobb, but SIA Estrada denied overtime for Plaintiff specifically, "without giving any rational explanation." (*Id.* at ¶ 5.)

Lourdes Mettry, the Health Service Administrator at USP Atwater during the relevant time period, declared that in 2009 she presented Warden Rios with a request to transfer Plaintiff

to her department, due to Plaintiff's medical training. When presented with the request, Warden Rios interrupted and said, "If you're talking about Guthrie, it's not going to happen." (Doc. 71, Ex. D, Declaration of Lourdes Mettry ("Mettry Decl.") at ¶¶ 1, 5.) Ms. Metrry also recalled that Plaintiff was berated on mainline for allegedly not patting an inmate down correctly, and "that there was subsequently a change in pat-down procedure announced that specifically mentioned that it was being adopted because of how 'Guthrie' allegedly inadequate performance." (*Id.* at ¶ 6.)

### D. Legal Standard

A court will grant summary judgment "if...there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[],

18

its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc*., No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *see also Doutherd v. Montesdeoca*, No. 2:17-cv-02225-KJM-JDP, 2020 WL 6043952, at *11 (E.D. Cal. Oct. 13, 2020).

**E.     DISCUSSION**

**1.   Hostile Work Environment - Title VII**

Title VII prohibits employers from discriminating against an employee on the basis of sex with respect to her "compensation, terms, conditions, or privileges of employment[.]" 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). "To establish sex discrimination under a hostile work environment theory, a plaintiff must show she was subjected to sex-based harassment that was sufficiently severe or pervasive to alter the conditions of employment, and that her employer is liable for this hostile work environment." *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020); *see also Ochs v. Eugene Emeralds Baseball Club, Inc.*, 774 F. App'x 1026, 1028 (9th Cir. 2019) ("To establish a prima facie hostile work environment claim, [plaintiff] needed to show that "because of her [ ] sex, she was subjected to unwelcome conduct that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.").

Title VII is not a "general civility code." *Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000). The working environment must be "subjectively and objectively" hostile. *Id.* at 923. In determining whether the conduct was sufficiently severe or pervasive, the court "must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Christian*, 984 F.3d at 809 (internal quotations and citations omitted); *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005) (making the objective determination of whether the work environment is hostile requires courts to look at all of the circumstances, including the frequency, severity, and nature of the conduct). "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Brooks*, 229 F.3d at 926 (citation and quotation omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005).

Federal courts distinguish between "discrete" and "non-discrete" acts of discrimination and retaliation. *Porter*, 419 F.3d at 892–93; *Yonemoto v. Shinseki*, 3 F.Supp.3d 827, 845 (D. Haw. 2014) ("*Porter* teaches that Plaintiff's allegations of discrete acts are separate from the allegations of non-discrete acts making up his hostile work environment claim."); *Rekow v. Sebelius*, No.

CIV 10-8156-PCT-PGR, 2011 WL 1791272, at *3 (D. Ariz. May 11, 2011) (distinguishing between "discrete discriminatory acts" and a hostile work environment). Discrete acts include acts such as "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp v. Morgan,* 536 U.S. 101, 114 (2002). In contrast to discrete acts, hostile-work-environment claims "involve[ ] repeated conduct," and "occur[ ] over a series of days or perhaps years." *Id.* at 115. Examples of non-discrete acts include sexual propositions, insults, and obscenities. *Porter*, 419 F.3d. at 892–93.

To analyze a discrimination claim under a hostile work environment theory, a court must first set aside any discrete acts, then determine whether the non-discrete acts are sufficiently severe and pervasive to establish a hostile work environment. *See Porter*, 419 F.3d at 893–94. "Of course, discrete acts still may be considered for purposes of placing non-discrete acts in the proper context." *Id.* at 893 n. 4 (citing *Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

Defendant argues that Plaintiff's hostile work environment claim fails because most of her alleged incidents of discrimination are not sexual in nature. For instance, Defendant asserts that Plaintiff's allegations that Estrada excluded her from a meeting in June 2008, questioned her casual dress in July 2008, and told her she was "third in charge" in July 2008 are not sexual and cannot support her hostile work environment claim. (Doc. 65-1 at 18.) Defendant likewise argues that Plaintiff's allegations about overtime and coffee in August and September 2008, Estrada inquiring whether she asked Mettry about a nursing job in February 2009, Estrada's refusal to grant her another alternative work schedule in May, August, and September 2009, her exclusion from training, SHU meetings, e-mails, and briefings, or Estrada's inquiry about Plaintiff's computer usage are not sexual in nature. Defendant contends that Plaintiff's gender-based allegations (*e.g.*, being berated when men were not, prevented from doing tasks that male employees performed, being denied scheduling accommodations afforded to men, and being excluded or ignored) raise issues of disparate treatment, a claim that has been abandoned by Plaintiff.

///

Defendant further argues that Plaintiff's claim fails because her alleged incidents are discrete acts, such as being singled out for criticism in June 2008 about dressing down, receiving falsely negative performance reviews and work assessments, being relegated third in the SIS chain of command, being given less desirable duties, being sent home prior to the end of her shift in September 2009, being denied an alternative work schedule, being denied overtime in August 2008 and being denied training opportunities. (Doc. 65-1 at 20-21.) Defendant argues discrete acts are not considered for pervasive conduct.

Additionally, Defendant claims that most of the alleged incidents have non-discriminatory explanations, citing purported reasons why Estrada excluded Plaintiff from a meeting in June 2008, excluded her from certain meetings, turned his back on her during meetings, criticized her attire, told her she was third in charge, told her overtime was not available in August 2008, inquired about why his coffee wasn't made, inquired whether she asked Mettry about a nursing job, denied her request for an alternative schedule, told her to go home on September 4, 2009, failed to select her for training, and asked Carstersen to scan her computer.[7] (*Id.* at 21-25.)

Finally, Defendant argues that setting aside the alleged incidents that are not sexual, are discrete acts, and have non-discriminatory reasons, the remaining incidents are not sufficiently severe or pervasive to establish an objectively abusive working environment. (*Id.* at 26-27.)

Plaintiff counters that the record debunks Defendant's arguments that her hostile work environment claim fails because any mistreatment was not gender-based, consists of discrete acts, has non-discriminatory explanations, and was not pervasive or severe. (Doc. 69 at 12.) Plaintiff claims that the evidence shows that--for approximately 18 months--hostile conduct polluted her workplace. Recapping the evidence, Plaintiff argues that she had to "deal on a regular and ongoing basis with a supervisor who subjected her to mean-spirited, hip-thrusting sexual commentary, related to her husband's genitals, or her needing to be bent over or have her legs in

---

[7]     The Court cannot accept the purported non-discriminatory reasons. Plaintiff disputes or challenges the explanations. For instance, Plaintiff questions what "non-discriminatory consideration could explain or justify Estrada's ongoing sexual commentary, his comments about Plaintiff's appearance, or her not belonging at the institution." (Doc. 69 at 15.) Plaintiff also contends that with respect to the factual issues of her "exclusion, isolation and inferior treatment, a trier of fact would have to . . . discredit Plaintiff…and her other evidence." (*Id.*) At the summary judgment stage, the Court must believe Plaintiff's evidence and draw all reasonable inferences in her favor. *Anderson*, 477 U.S. at 255.

the air." (*Id.* at 13.)   Plaintiff also was told, on an ongoing and frequent basis, "that she did not belong in her job because of her gender, had her appearance commented on in an insulting manner, capriciously berated when men were not, . . . [and] repeatedly instructed to perform household-type services, such as making coffee or cleaning . . . ." (*Id.*)  Plaintiff notes that she repeatedly testified that this mistreatment was all "continuous and ongoing" rather than isolated or sporadic. (*Id.*)

In reply, Defendant argues that Plaintiff cannot allege new instances of alleged verbal or physical conduct of sexual nature, such as allegations about Estrada thrusting her doorway and saying she should be bent over in a kitchen with her legs up in the air. (Doc. No 75 at 4.) Defendant contends that because Plaintiff did not present these incidents in her administrative complaint, then they may not be considered by a federal court.[8]  (*Id.* at 5.)  Defendant also reiterates that Plaintiff's alleged incidents of discrimination have legitimate explanations, and she has failed to adduce evidence of pretext. (*Id.* at 6.)

Setting aside any discrete acts and viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff presents evidence creating a genuine issue of material fact as to whether Estrada's conduct was sufficiently severe or pervasive to create a hostile work environment. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987) (holding that on summary judgment the court must view the evidence in the light most favorable to the nonmoving party and inferences must be drawn in the light most favorable to the nonmoving party).  "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships, and what might be an

---

[8]       "Although allegations of discrimination not included in a plaintiff's EEOC charge generally may not be considered by a federal court, subject matter jurisdiction extends over all allegations of discrimination that either "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citation and quotation omitted); *see also Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997).  Courts "consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Freeman* 291 F.3d at 636 (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).  Plaintiff's allegations about Estrada thrusting in her doorway and saying she should be bent over in a kitchen with her legs up in the air are consistent with Plaintiff's theory of the case and reasonably related to the allegations in her EEOC charge, such as the Texas Longhorn comment.

innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned, humiliated, or intimidated on account of her gender." *Christian,* 984 F.3d at 809–10 (internal citations and internal quotations omitted). Here, Plaintiff offers evidence that beginning in May 2008, Estrada made offensive sexual comments to her, including about her never having had a "Texas Longhorn," which Plaintiff understood to refer to her husband's penis size, making thrusting motions while making other sexually inappropriate comments, and telling her she should be at home bent over in a kitchen, or with her legs up in the air. Plaintiff also presents evidence that Estrada called her a "fat cow" in front of other staff, made ongoing comments about Plaintiff having to make coffee for the unit or cleaning the unit, requests that were not made of the male staff, and made comments sexualizing other female staff in Plaintiff's presence that she found offensive. Additionally, Plaintiff testified that Estrada's comments and harassment were continuous and ongoing, and she offered statements from witnesses suggesting that she was the target of frequent, consistent singling out and inferior treatment, along with comments based on her gender. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035 (9th Cir. 2005) (discussing court's necessary consideration of the frequency of discriminatory remarks). In these surrounding circumstances, a jury could find that Estrada's repeated comments and actions subjected Plaintiff to sex-based harassment that was sufficiently severe or pervasive to alter the conditions of employment. *Christian*, 984 F.3d at 809. Defendant's motion for summary judgment on Plaintiff's Title VII hostile work environment claim is therefore denied.

### 2. Retaliation

Under Title VII, it is unlawful for an employer to retaliate against an employee who has asserted his or her rights under Title VII. See 42 U.S.C. § 2000e-3(a). To establish a prima facie case for retaliation, a plaintiff must show that she engaged in protected activity, she was subsequently subjected to an adverse employment action, and that a causal link exists between the two. *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008) ("The elements of a prima facie retaliation claim are, (1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3)

24

there was a causal link between the protected activity and the adverse employment action."). "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson*, 630 F.3d at 936.

If the plaintiff establishes a prima facie case of unlawful retaliation, then the burden shifts to the defendant "to advance a legitimate, nonretaliatory reason for any adverse employment action." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 693 (9th Cir. 2017). If the employer meets this burden, then the plaintiff must demonstrate that the reason was merely a pretext for a discriminatory motive. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir.2000).

Defendant argues that Plaintiff's vague allegations that she complained of "gender discriminatory and harassing treatment" beginning in June 2008 are insufficient to demonstrate activity protected by Title VII. (Doc. 65-1 at 28.) However, Defendant admits that Plaintiff's contact with an EEO counselor on September 17, 2009, qualifies as activity protected by Title VII. (*Id.* at 29.) Plaintiff counters, without specifics, that her "various informal and formal complaints each qualifies as protected activity under Title VII," (Doc. 69 at 15, n. 1), and that the record shows that she repeatedly complained about mistreatment (*Id.* at 16). Plaintiff generally asserts that her evidence demonstrates she was subjected to multiple retaliatory adverse actions. She further asserts that it is well-settled in this Circuit that her being subjected to an investigation in October 2009 in the immediate aftermath of complaining about Estrada constitutes an adverse action for purposes of Title VII retaliation. (Doc. 69 at 16.) In reply, Defendant argues that Plaintiff's evidence of engaging in protected activity is deficient, involving vague labels and characterizations of her alleged informal complaints. Defendant instead contends that "Plaintiff's retaliation theory boils down to a request to scan her computer in October 2009." (Doc. 75 at 10.) Defendant urges that this claim cannot survive summary judgment because there is no evidence of causation, proposing to scan her computer is not actionable retaliation, and the request to scan her computer was entirely reasonable.

Viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has established a genuine issue of material fact in support of her prima facie case. The

undisputed evidence demonstrates that Plaintiff's contact with an EEO counselor on September 17, 2009, qualifies as activity protected by Title VII. Although Defendant argues that there is no "but for" connection between Plaintiff seeking EEO counseling and the request to scan her computer, the requisite causal link between protected activity and an adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). Notably, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see also Ray*, 217 F.3d at 1244 (finding causation may be inferred from "proximity in time between the protected action and the allegedly retaliatory employment decision."). Plaintiff presents evidence that she contacted her EEO counselor on September 17, 2009, and, less than a month later, in October 2009, Estrada asked Carstersen to scan Plaintiff's government-owned computer, and when Carstersen told Estrada that prison policy prohibited scanning the computer, Estrada raised the issue with the Warden. Plaintiff learned of this request when Carstersen contacted Plaintiff on October 15, 2009. Additionally, Plaintiff presents testimony from Warden Rios acknowledging that shortly after Plaintiff complained to him that Estrada had made inappropriate remarks, he and Estrada investigated Plaintiff's computer use. (Doc. 71, Ex. N at 409-10.)

Defendant further argues that the request for investigation of Plaintiff's computer does not demonstrate an adverse employment action. In other words, merely proposing to scan Plaintiff's computer, without more, is not actionable retaliation. However, courts have determined that institution of an investigation constitutes an adverse employment action. *See Coszalter v. City of Salem*, 320 F.3d 968, 976-977 (9th Cir. 2009) (finding that "some, perhaps all, of the following acts, considered individually, were adverse employment actions...: the transfer to new duties...; an unwarranted disciplinary investigation...; an unwarranted assignment of blame...; a reprimand containing a false accusation...; a criminal investigation...; repeated and ongoing verbal harassment and humiliation...; a ten-day suspension from work...; a threat of disciplinary

action…; an unpleasant work assignment…; a withholding of customary public recognition…; an unwarranted disciplinary action…; and two consecutive ninety-day "special" reviews of work quality…."); *Marceau v. Idaho*, No. 1:09-CV-00514-N-EJL, 2011 WL 3439178, at *13 (D. Idaho Aug. 5, 2011) (finding that "targeted surveillance of an employee" is a distinct adverse employment action); *but see*, *e.g.*, *Higdon v. Mabus*, 5 F.Supp.3d 1199, 1212 (S.D. Cal. 2014) (holding that subjecting the plaintiff to a "computer and Internet usage review," for which she sustained no discipline, was not a materially adverse employment action); *Equal Employment Opportunity Comm'n v. Swissport Fueling, Inc.*, 916 F.Supp.2d 1005, 1029 (D. Ariz. 2013) (concluding that being the subject of an administrative investigation is not an adverse employment action).

The burden therefore shifts to Defendant to offer legitimate, non-discriminatory explanations for the challenged action. Defendant asserts that the request by Estrada, as Plaintiff's supervisor, was entirely reasonable because pornography appeared on Plaintiff's government-owned computer. (Doc. 75 at 10-11.) The Court finds this to be a legitimate reason. As a consequence, the burden shifts back to Plaintiff to show pretext.

Circumstantial evidence of pretext must be specific and substantial. *Yonemoto v. Shinseki*, 3 F. Supp. 3d 827, 849 (D. Haw. 2014). Here, Plaintiff submits evidence suggesting an impermissible reason or pretext for the investigation of her computer. Carstersen contacted Plaintiff on October 15, 2009, about Estrada's and the Warden's interest in her computer. (Doc. 65-11, Ex. 7 at 102-103.) Carstersen reportedly told Plaintiff she "need[ed] to be careful" because "[t]he warden is after you and so is SIA Estrada. . . they're trying to get me to pin you on something, to put something in the computer to pin you." (*Id.* at 103.) Moreover, Plaintiff reports that she was not the only person who used the computer. (Doc. 70 at 6.) These facts raise the inference that Defendant's explanation is not legitimate, or at the very least pretext for an improper purpose. Based on the record before the Court, a jury could reject Defendant's explanation for the proposed investigation of Plaintiff's computer.

The Ninth Circuit also has recognized "retaliation-based hostile work environment" as a viable claim for relief under Title VII. *Ray*, 217 F.3d at 1245 (following the Second, Seventh, and

Tenth Circuits in permitting an action against an employer for a retaliation-based hostile work environment); *see also Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004) (recognizing "retaliatory harassment" as a "valid basis for a retaliation claim"). "The *Ray* court noted that harassment is 'obviously actionable when based on race and gender,' and '[h]arassment as retaliation for engaging in protected activity should be no different.'" *Ramirez v. Providence Saint John's Health Ctr. Providence Health & Servs.*, No. CV1801984ABDFMX, 2018 WL 6174711, at *3 (C.D. Cal. Sept. 18, 2018), quoting *Ray*, 217 F.3d at 1245. As with hostile work environment cases, harassment is actionable only if "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). While "[i]t is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position," to "[s]imply caus[e] an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

In *Ray*, the plaintiff presented evidence that after he complained about the treatment of women at the post office where he worked, he was targeted for verbal abuse related to those complaints, yelled at during staff meetings, called names such as "liar" and "troublemaker," subjected to pranks, and falsely accused of misconduct. *Ray*, 217 F.3d at 1245–46. Additionally, his supervisors made it harder for him to complete his own tasks and fostered animus in other employees, causing the difficulties at work to rise to a level requiring him to take stress leave. The *Ray* court concluded that based on these allegations, a genuine issue of fact existed as to whether the plaintiff was subjected to a hostile work environment and found that the district court erred in granting summary judgment on the hostile work environment-based retaliation claim. *Id.* at 1246.

As in *Ray*, Plaintiff presents evidence that she began complaining about harassment by Estrada beginning in June 2008 through September 2009, first to her supervisors, including captains, lieutenants and the associate warden, and then to the EEO counselor. Despite these complaints, the harassment by Estrada continued, including being called names, such as "fat

cow," being subjected to verbal and physical conduct of an offensive sexual nature, being excluded from meetings and assignments, being accused of misconduct and ultimately being subjected to an investigation. This final act ultimately led to Plaintiff's resignation. Plaintiff's evidence, for purposes of summary judgment, is sufficient to raise a genuine issue of fact as to whether she was subjected to a hostile work environment-based retaliation claim.

Based on the foregoing, Defendant's motion for summary judgment on Plaintiff's retaliation claim is denied.

### 3. Constructive Discharge

Defendant contends that the operative complaint does not assert a claim of constructive discharge, and if she were allowed to assert such a claim, it would fail as a matter of law. (Doc. 65-1 at 31.) Plaintiff admits that she has not alleged constructive discharge, but still seeks prospective compensation because she sought reinstatement in her EEOC claim and reinstatement is no longer possible because of the BOP's mandatory retirement age. Plaintiff avers, however, that the issue of damages is not before the Court. (Doc. 69 at 15, n. 8.) In reply, Defendant acknowledges Plaintiff's concession and argues that because Plaintiff is not asserting a constructive discharge claim, then, as a matter of law, she is precluded from seeking back pay.

The issue of damages is not properly before the Court. Although Defendant argued that any constructive discharge theory failed as a matter of law, Defendant's moving papers did not seek summary judgment on damages issues, (*see generally* Doc. 65-1 at 30-33), and the parties have not had an opportunity to fully brief those issues.

///

///

///

///

///

///

///

///

1

**CONCLUSION AND ORDER**

2    For the reasons stated, IT IS HEREBY ORDERED as follows:

3    1.   Defendant's motion to strike (Doc.74) is DENIED;

4    2.   Plaintiff's motion to strike (Doc. 79) is DENIED; and

5    3.   Defendant's motion for summary judgment (Doc. 65) is DENIED.

6

7    IT IS SO ORDERED.

8    Dated:   __**May 17, 2021**__                        ___/s/ _Barbara A. McAuliffe_ ___

9                                                UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28